UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MUSLIM COMMUNITY ASSOCIATION
OF ANN ARBOR AND VICINITY, a/k/a
MCA, d/b/a MICHIGAN ISLAMIC ACADEMY,
a/k/a MIA,

          Plaintiff,

v.                                   Case No. 12-10803
                                   Honorable Patrick J. Duggan

PITTSFIELD CHARTER TOWNSHIP,
THE TOWNSHIP BOARD OF PITTSFIELD CHARTER
TOWNSHIP, Supervisor of Pittsfield Charter Township
MANDY GREWAL, and ALAN ISRAEL,
PATRICIA TUPACZ SCRIBNER, ANDREA
BROWN-HARRISON, STEPHANIE HUNT,
GERALD KRONE, AND MICHAEL YI, individually
and in their official capacities as Members of the BOARD
OF TRUSTEES OF PITTSFIELD CHARTER TOWNSHIP,

          Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

This action, filed February 22, 2012, follows the Pittsfield Township Board of

Trustees' denial of Plaintiff's application to rezone property in Pittsfield Township in

order to build an Islamic school and community center.  Plaintiff is suing Pittsfield

Charter Township ("Township") and the Township Board ("Board") (collectively "Entity

Defendants"), the Township's Supervisor Mandy Grewal ("Grewal"), and the six

additional members of the Township's Board of Trustees (collectively "Individual

Defendants").[1]  The Individual Defendants are being sued in their individual and official capacities.

Plaintiff filed an amended complaint on March 21, 2012.  In response to motions to dismiss subsequently filed by Defendants, Plaintiff sought leave to file a second amended complaint on June 28, 2012.  Magistrate Judge David R. Grand granted Plaintiff's motion on August 17, 2012.[2]  Plaintiff's Second Amended Complaint alleges violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") (Counts I-III), the United States Constitution pursuant to 42 U.S.C. § 1983 (Counts IV-X), and the Michigan Constitution (Count "XII").[3]  More specifically, Plaintiff asserts the following counts:

> (I) violation of RLUIPA's "substantial burden" provision by the "official capacity Defendants";
>
> (II) discrimination in violation of RLUIPA against the "official capacity Defendants";
>
> (III) violation of RLUIPA's "limitations and exclusion" provision by the "official capacity Defendants";
>
> (IV) violation of the Free Exercise Clause of the First and Fourteenth Amendments by all defendants;

---

[1]Although not clear from Plaintiff's pleadings, Grewal is the Township Supervisor *and* a member of the Board of Trustees. *See* www.pittsfieldtwp.org/Board_of_Trustees.

[2]Plaintiff attached its proposed Second Amended Complaint to its motion seeking leave to file the pleading.  It has not actually filed the complaint since Magistrate Judge Grand granted the motion.

[3]There is no Count XI in Plaintiff's Second Amended Complaint.

(V) violation of the Establishment Clause of the First and Fourteenth
Amendments by all defendants;

(VI) violation of the Free Speech Clause of the First and Fourteenth
Amendments by all defendants;

(VII) violation of the Freedom of Assembly Clause of the First and
Fourteenth Amendments by all defendants;

(VIII)  violation of the Equal Protection Clause of the Fourteenth
Amendment by all defendants;

(IX) violation of the Procedural Due Process Clause of the Fourteenth
Amendment by all defendants;

(X) violation of the Substantive Due Process Clause of the Fifth
Amendment by all defendants; and

("XII") "state law claims".

(ECF No. 30-1.)

The Entity Defendants filed a motion to dismiss Plaintiff's Second Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on November 15, 2012.

On the same date, the Individual Defendants also filed a motion to dismiss.  Plaintiff filed

a combined response to the motions on December 24, 2012.  Defendants filed a combined

reply on January 21, 2013.  The Court held a motion hearing on April 23, 2013, and for

the reasons that follow, now grants in part and denies in part Defendants' motions.

## I.      Rule 12(b)(6) Standards

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78

F.3d 1125, 1134 (6th Cir. 1996).  Under Federal Rule of Civil Procedure 8(a)(2), a

pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id*.; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668, 129 S. Ct. at 1949. Therefore,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-66).

## II.   Factual Background[4]

Plaintiff Muslim Community Association of Ann Arbor and Vicinity ("Plaintiff") is a Michigan domestic nonprofit corporation located at 2301 Plymouth Road in Ann Arbor, Michigan.  Plaintiff does business as Michigan Islamic Academy ("MIA"), an Islamic full-time school providing secular and religious (Islamic) education for preschool through twelfth grade students.  Plaintiff currently operates at MCA's Plymouth Road address.

Plaintiff has concluded that MIA's current 10,000 square feet facility can no longer accommodate the growing local Muslim student population of Washtenaw County. (ECF No. 30-1 ¶ 27.)  Plaintiff contends that MIA's facilities are inadequate, its infrastructure is deteriorating, its classrooms are congested, and there is no space for a school kitchen or cafeteria, gymnasium, locker room, auditorium, library, student lounge, computer and science labs, or outdoor sports facility.  (*Id.*)  Plaintiff identified property in Pittsfield Township (the "Property") as a suitable location for a new school.

The Property is undeveloped and is approximately 26.7 acres in size.  (*Id.* ¶ 29.)  It is zoned "Planned Unit Development" ("PUD") and is "exclusively residential."  (*Id.* ¶ 31, 34-38.)  According to the Township Zoning Ordinance, schools are a permitted use

---

[4]Pursuant to Rule 12(b)(6)'s standard, the facts set forth herein are taken from Plaintiff's Second Amended Complaint.

in residential areas.  (*Id.* ¶ 36.)

Prior to purchasing the Property, MIA representatives met with Grewal, the

Pittsfield Township Supervisor.  (*Id.* ¶ 40.)  During this meeting, the MIA representatives

informed Grewal of the intended use of the Property, specifically the construction of an

Islamic school and community center.  (*Id.* ¶ 42.)  Grewal assured MIA's representatives

that, if MIA followed the proper procedures to rezone the Property, "MIA should not

have any problems gaining approval to rezone the subject property."  (*Id.* ¶ 43.)  Grewal

also represented that MIA's intended use of the Property conformed to the intent of the

Master Plan and existing PUD.  (*Id.* ¶ 44.)  Plaintiff maintains that MIA's representatives

received similar confirmations from other Township representatives, including the Senior

Planner, attorney, and members of its engineering department.  (*Id.* ¶ 45.)

MIA purchased the Property at a foreclosure auction on September 13, 2010.  On

December 8, 2010, it submitted a petition to rezone 18.41 acres of the undeveloped

portion for its school and community center.  The Township's Planning Commission

hired an independent outside planner to evaluate MIA's rezoning petition.  Plaintiff

alleges that the Planning Commission has never hired an independent outside planner to

provide an evaluation of a petitioner's request.  (*Id.* ¶ 52.)  During the site plan review

process, the independent outside planner asked MIA to make a number of significant

amendments to its original site plan to alleviate concerns raised by the Planning

Commission, which MIA made.  (*Id.* ¶¶ 53, 54.)  The Planning Commission nevertheless

continued to express concerns regarding visual screening, noise, light, and traffic.  (*Id.*

6

¶ 55.)

MIA proposed to build homes to create a visual screening from the neighborhoods, but the Planning Commission rejected this proposal.  MIA also proposed to construct berms and install trees to alleviate the noise and light inherent to schools.  To address the Planning Commission's concerns regarding traffic, the independent outside planner required MIA to conduct a traffic study which Plaintiff contends was a more thorough and expansive study than required of other petitioners similarly situated in all material respects.  (*Id.* ¶ 61.)  Plaintiff alleges that the traffic study reflected no traffic problems posed by MIA's proposed construction.  (*Id.* ¶¶ 66-70.)  Plaintiff contends that it expended substantial sums not required of other similarly situated petitioners to address issues and meet requirements in the rezoning process.

The independent outside planner ultimately recommended approval of MIA's proposed site plan, finding that it met all requirements under the Zoning Ordinance and Master Plan.  (*Id.* ¶ 75.)  Many residents, however, expressed opposition to the plan at several public hearings held before the Planning Commission.  Some comments by residents suggested animus to the Islamic faith.  (*See id.* ¶¶ 77-78.)  Ultimately the Planning Commission recommended denial of MIA's petition finding that the proposed use of the Property "is 'incompatible with the residential neighborhood due to the existing character, potential traffic impacts, issues of noise and visual screening.'"  (*Id.* ¶ 84.)

Plaintiff maintains that these findings are contrary to the objective evidence and constituted a purely subjective determination by the Planning Commission.  Plaintiff

7

identifies other instances where the Planning Commission recommended approval of petitions, despite traffic concerns, including the development of a Walmart, six Christian institutions and assemblies, a Costco Wholesale, and Swift Run.  (*See id*. ¶¶ 91-108.) Plaintiff claims the Planning Commission neither hired independent outside planners to evaluate these petitions nor required the petitioners to conduct traffic impact studies.  (*Id*.)

At a meeting on October 26, 2011, the Board of Trustees unanimously adopted the Planning Commissions recommendation to deny MIA's petition.  No reasons were provided for the Board of Trustee's decision.  Plaintiff claims it was denied a public hearing and opportunity to provide a meaningful defense before the Board of Trustees, despite an MIA representative's request two weeks prior to the Board of Trustees' vote that MIA have an opportunity to address the Township at a hearing.  (*Id*. ¶ 112.) According to Plaintiff, before the Board of Trustees voted on the petition, Defendant Michael Yi told an MIA representative that its Islamic faith was the reason it was experiencing hostility and resistance to the project.  (*Id*. ¶ 116.)

### III.     Applicable Law and Analysis

In their motion to dismiss, the Individual Defendants maintain that they are entitled

to absolute, legislative, and/or qualified immunity from Plaintiff's claims.  To the extent

they are sued in their official capacities, the Individual Defendants also argue that

Plaintiff's inclusion of the Township as a defendant makes its claims against the

Individual Defendants in their official capacities redundant and subject to dismissal.  The

Individual Defendants further argue that Plaintiff fails to allege that they were personally

involved in the alleged deprivation of its federal rights.  The remaining arguments in the

Individual Defendants' motion overlaps those in the motion filed by the Entity

Defendants.  Those arguments assert that Plaintiff, for one or more reasons, fails to assert

claims on which relief may be granted.

### A.     Absolute Legislative Immunity[5]

Legislators are entitled to absolute immunity for the actions they take in their

legislative capacity.  *Haskell v. Washington Twp.*, 864 F.2d 1266, 1277 (6th Cir. 1988)

(citing *Tenney v. Brandhove*, 341 U.S. 367, 71 S. Ct. 783 (1951)); *Bogan v. Scott-Harris*,

523 U.S. 44, 49, 118 S. Ct. 966, 970 (1988) (extending legislative immunity to local

legislators).  In contrast, legislative officials performing traditionally executive or

---

[5]The Individual Defendants state that they "are entitled to absolute *and/or* legislative immunity."  (*see* ECF No. 52 at 20, emphasis added.)  In this section, they are arguing that they are entitled to absolute legislative immunity.  There is no separate basis presented for "absolute" immunity in this section of their brief.  While they also seek qualified immunity, their argument is presented elsewhere and will be addressed separately herein.

9

administrative discretionary functions are entitled to only qualified immunity if they can establish that their actions were within the scope of their duties and were taken with a reasonable belief as to their lawfulness. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S. Ct. 2727, 2732 (1982). A defendant bears the burden of establishing the existence of immunity. *Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000).

"Whether an act is legislative depends on the nature of the act, rather than the official's motive or intent." *Guindon v. Twp. of Dundee, Michigan*, 488 F. App'x 27, 33 (6th Cir. 2012) (citing *Bogan* at 55, 118 S. Ct. at 973). The first relevant consideration is whether the acts "were integral steps in the legislative process." *Id.* Next, a court must consider whether the acts were "legislative in substance," that is "whether they 'bore all the hallmarks of traditional legislation,' including 'a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents.'" *Id.* (citing *Bogan*, 523 U.S. at 55-56, 118 S. Ct. at 966). "[T]he various activities of most local or municipal officials cannot be characterized as only administrative, legislative, or judicial. Instead, the scope of immunity depends on the nature of the activity involved." *Haskell*, 864 F.2d at 1277-78.

The Sixth Circuit has recognized that "zoning is ordinarily a legislative activity" but that "it is not always legislative for purposes of immunity." *Id.* at 1278 (citing *Cutting v. Muzzey*, 724 F.2d 259 (1st Cir. 1984) (concluding that the "[m]embers of a municipal planning board were not entitled to absolute immunity when imposing conditions on a developer because of racial animus)). The court elaborated:

10

If the underlying purpose of zoning activity is to establish general policy, then it is legislative. . . . If, however, "the action 'single[s] out specifiable individuals and affect[s] them differently from others,' it is administrative." *Cutting*, 724 F.2d at 261.  *See Scott v. Greenville County*, 716 F.2d 1409, 1423 (4th Cir.1983) ("When local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement, they can claim only the executive qualified immunity appropriate to that activity.").  Moreover, absolute immunity does not extend to even traditionally legislative actions of officials taken either in bad faith, because of corruption, or primarily in furtherance of personal instead of public interests.

*Haskell*, 864 F.2d at 1278 (brackets in original and additional citations omitted).

Applying these standards, the Sixth Circuit in *Guindon* held that members of Washington Township's Board of Trustees were not entitled to legislative immunity with respect to the plaintiffs' claims regarding the denial of their building permit request.  488 F. App'x at 34.  The court concluded that this was an administrative activity, relying on its previous decision in *Jaggers v. City of Alexandria*, No. 08-5213, 2009 WL 233244, at *4-6 (6th Cir. Feb. 2, 2009).  In *Jaggers*, the court held that the defendant city council members could not establish as a matter of law that they were entitled to legislative immunity with respect to their decision to deny the plaintiffs' proposed site-plan development.  *Id*.

In line with these decisions, this Court must conclude here that the Individual Defendants are not entitled to legislative immunity with respect to their decision to deny Plaintiff's rezoning application.  However, to the extent Plaintiff is alleging that the Individual Defendants violated its rights by not scheduling a hearing before the Board of Trustees to address the application, Sixth Circuit precedent indicates that this was a

11

legislative act for which they are entitled to legislative immunity.  *See Guindon*, 488 F.
App'x at 34-35 (holding that the township board of trustees' decision not to place the
plaintiff on the agenda was a legislative act).  The Court will evaluate whether the
Individual Defendants are entitled to qualified immunity later in this Opinion.

### B.      Personal Involvement

A complaint must allege facts establishing the personal involvement of a defendant
in the alleged unlawful conduct.  *See, e.g., Monell v. Dep't of Soc. Services*, 436 U.S. 658,
691-92, 98 S. Ct. 2018, 2036 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).
The Individual Defendants contend that Plaintiff fails to allege facts in its Second
Amended Complaint establishing their personal involvement in the claimed deprivations
of its federal constitutional rights.  Plaintiff specifically alleges, however, that the manner
in which the Board of Trustees decided its rezoning application and the actual decision to
deny the application violated Plaintiff's rights.  In referring to the Board of Trustees,
generally, Plaintiff is speaking of the Individual Defendants, specifically, as each is a
member.

To the extent Defendants are arguing that there are insufficient facts alleged in
Plaintiff's Second Amended Complaint to suggest that each individual board member
acted with religious animus, this Court disagrees.  Defendants' counsel correctly pointed
out at the motion hearing that Plaintiff's Second Amended Complaint is devoid of
allegations concerning the act and/or animus of each member of the Board of Trustees,
individually.  However, Plaintiff alleges that the Board of Trustees– encompassing each

12

individual member– denied its rezoning petition and Plaintiff includes sufficient facts to make plausible its claim that the denial was a result of religious animus rather than legitimate criteria. For example, in addition to the allegation concerning Defendant Michael Yi (*see* ECF No. 30-1 ¶ 116), Plaintiff's Second Amended Complaint presents facts suggesting that it was treated differently than non-Islamic zoning petitioners both in the review process and ultimate decision with respect to its petition and that the reasons provided for the denial of its zoning application were contrary to the objective evidence.

As such, the Court finds that Plaintiff sufficiently alleges each Individual Defendant's involvement in the asserted violations to avoid Rule 12(b)(6) dismissal.

### C.   Official Capacity Claims

The Individual Defendants seek dismissal of Plaintiff's claims against them in their "official capacities" because such claims are equivalent to suing the Township itself and the Township already is named as a defendant.

As the Supreme Court explained in *Kentucky v. Graham*, 473 U.S. 159, 105 S. Ct. 3099 (1985), a suit against a government official in his or her official capacity is "'only another way of pleading an action against an entity of which an officer is an agent.'" *Id*. at 165-66, 105 S. Ct. at 3105 (quoting *Monell*, 436 U.S. at 690, n. 55, 98 S. Ct. at 2035, n. 55). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166, 105 S. Ct. at 3105 (citing *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 878 (1985)). Based on these principles, where a complaint names an official-

13

capacity defendant and the entity of which the officer is an agent, the Sixth Circuit and courts in this District have dismissed the official capacity defendant citing redundancy. *See Jackson v. Shelby Cnty Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. 2008); *Ebelt v. Cnty. of Ogemaw*, 231 F. Supp. 2d 563, 568 (E.D. Mich. 2002) (Lawson, J.); *BBF Eng'g Services, PC v. Michigan*, No. 11-14853, 2012 WL 380282, at *4 (E.D. Mich. Feb. 6, 2012) (Edmunds, J.).  This Court sees no reason not to do the same here and therefore is dismissing the official capacity defendants.[6]  Any claim asserted against those defendants will be construed as a suit against the entity (i.e., the Township) instead.

### D.     Section 1983 Claims against the Entity Defendants

"To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law."  *Harris v. Circleville*, 583 F.3d 356, 364 (6th Cir. 2009) (citing *Dominguez v. Corr. Med. Serv.*, 555 F.3d 543, 549 (6th Cir. 2009)).  Under § 1983, a municipality can be held liable only if the plaintiff demonstrates that the injury suffered was a direct result of the municipality's official policy or custom. *Monell*, 436 U.S. at 694-95, 98 S. Ct. at 2037-38; *Slusher v. Carson*, 540 F.3d 449, 456 (6th Cir. 2008).  However in *Pembaur v. City of Cincinnati*,

_____

[6]Plaintiff contends that there are "disadvantages in discovery if Plaintiff is unable to file suit against the Official Capacity Defendants individually."  (ECF No. 54 at 12.) Specifically, Plaintiff states it will "be unable to serve them [the Individual Defendants] with interrogatories, requests for admission, and the other enhanced discovery tools available for use against parties."  (*Id.*)  However, because Plaintiff also is suing these defendants in their individual capacities, this asserted disadvantage is of no concern here.

475 U.S. 469, 106 S. Ct. 1292 (1986), the Supreme Court clarified that the "official policy or custom" requirement does not preclude municipal liability "for a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480, 106 S. Ct. at 1298.

Such circumstances arise and municipal liability attaches "[w]here the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 482, 106 S. Ct. at 1299. In other words, municipal liability will attach for an official's activity where the official is "responsible for establishing final government policy respecting such activity." *Id.* at 483, 106 S. Ct. at 1299-1300.

The Board of Trustees possessed final authority to grant or deny Plaintiff's rezoning application. As such, it is the policymaking body within the Township with respect to such matters. *See Paeth v. Worth Twp.*, 483 F. App'x 956, 964 (6th Cir. 2012) (quoting *Monell*, 436 U.S. at 690) (concluding that the township zoning board's final decision to deny the plaintiff's a variance fell within *Monell*'s definition of a municipal policy as "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." ).

The Court therefore rejects the Entity Defendants' argument that Plaintiff fails to allege a policy or custom to hold them liable for any constitutional violation under § 1983.

### E. Due Process Claims (Counts IX and X)

Plaintiff alleges that Defendants violated its procedural due process (Count IX)

15

and substantive due process (Count X) rights.  With respect to the former, Plaintiff asserts that it had a Fifth Amendment "right to a public hearing and an opportunity to provide a meaningful defense and to be heard before [the Board of Trustees]."  (ECF No. 30-1 ¶ 188.)  As to the latter, Plaintiff claims that it "has a constitutionally protected right to utilize its property free from the irrational, arbitrary, and capricious applications of zoning regulations" and that "[b]y applying the zoning regulations to Plaintiff in a discriminatory manner," Defendants violated this right.  (*Id.* ¶¶ 195-96.)

Defendants argue that Plaintiff's due process claims fail because (1) it has no constitutionally protected property right to rezoning or to build a school; (2)  it received ample notice and opportunity to be heard; and (3) Defendants' actions were not arbitrary and capricious and did not shock the conscience.

### 1.    Procedural Due Process

The Fourteenth Amendment forbids a state from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To establish a procedural due process violation, a plaintiff must demonstrate that: "1) it possessed a constitutionally protected property or liberty interest; 2) it was deprived of that interest; and (3) the state did not afford it adequate procedural rights prior to depriving it of that interest."  *Taylor Acquisitions, LLC v. City of Taylor*, 313 F. App'x 826, 830 (6th Cir. 2009) (citing *Club Italia Soccer & Sports Org. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006) and *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)).

16

"Property interests are not defined by the Constitution." *Taylor Acquisitions*, 313 F. App'x at 830 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972)). "Rather, they are created and defined by 'existing rules or understandings that stem from an independent source such as state law.'" *Id.* "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005) (quoting *Roth*, 408 U.S. at 577, 92 S. Ct. at 2709).

As such, a person cannot claim a protectable property interest in the receipt of a benefit "'when the state's decision to award or withhold the benefit is wholly discretionary.'" *Id.* (quoting *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)). It is only once the benefit is conferred that the person obtains a property interest. Thus, "[p]roperty owners may have a property interest in the *existing* zoning classification for their property . . . [and] in a discretionary benefit, such as a re-zoning ordinance, *after* it is conferred." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 856 (6th Cir. 2012) (internal citations and quotation marks omitted and emphasis added).

Plaintiff contends that the Michigan Zoning Enabling Act, Michigan Compiled Laws §§ 125.3101-3702, "command[s]" a township to grant a rezoning petition so long as the request is in compliance with the standards stated in its zoning ordinance. Even if Plaintiff is correct that the Michigan statute requires approval of a request if it is in compliance with the standards stated in the township's zoning ordinance– a proposition of

17

which the Court is not convinced– the determination of whether the request is in compliance with those standards is purely a discretionary decision left to the local zoning authority.  *See* Mich. Comp. Laws § 125.3503; ECF No. 52 Exs. 1, 2 [excerpts of the Pittsfield Charter Township Zoning Ordinance].  Alleged assurances from Grewal and other Township representatives that Plaintiff should have no problems gaining approval to rezone the Property (*see, e.g.*, ECF No. 30-1 ¶¶ 43-45) also did not confer a legitimate expectation in a favorable decision upon Plaintiff.  These individuals could not bind the Planning Commission and/or Board of Trustees.

In short, Plaintiff had no protected property interest in having its plan for the Property approved.  *See Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008) (finding no policy, law, or understanding with the township that created a property right in a future, rezoned land use for the plaintiff's property); *Taylor Acquisitions*, 313 F. App'x at 832-33 (same).  Plaintiff's procedural due process claim therefore is subject to dismissal.[7]

### 2.    Substantive Due Process

The Sixth Circuit recently restated the elements a plaintiff must show to state a substantive due-process claim raised in the context of zoning regulations:

> "that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through

---

[7]The Court therefore finds it unnecessary to address Defendants' argument that Plaintiff's procedural due process claim also is subject to dismissal because Plaintiff received ample notice and opportunity to be heard.

18

arbitrary and capricious action."

*EJS Properties, LLC*, 698 F.3d at 855 (quoting *Braun*, 519 F.3d at 573).

In *EJS Properties*, the court addressed the issue of whether "corrupt zoning decisions that 'shock the conscience' violate substantive due process regardless of whether a property or liberty interest is at stake." *Id*. at 861. After an analysis of the Sixth Circuit's prior decisions, the court concluded that, "in the context of a discretionary zoning decision, government action will not shock the conscience unless the arbitrary and capricious action touches on a protectable interest." *Id*. at 861-62. The court specifically rejected the plaintiff's claim that "a citizen has a fundamental right or liberty interest in having the government make discretionary decisions free from corruption . . .." *Id*. at 860.

As found in the preceding section, Plaintiff lacks a protected property or liberty interest with respect to the rezoning of the Property. As a matter of law, it therefore cannot establish the necessary elements of its substantive due process claim. Thus the Court also is dismissing this claim.

### F.     RLUIPA "Discrimination" (Count II) and Equal Protection (Count VIII) Claims

Defendants contend that Plaintiff's Second Amended Complaint is devoid of facts to support a *prima facie* discrimination claim under RLUIPA or a violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment because it does not identify similarly situated secular zoning applicants treated differently than Plaintiff.

19

### 1.      RLUIPA's "Discrimination" Provision

RLUIPA's "discrimination and exclusion" provision proscribes three types of unlawful activity, two of which the Individual Defendants are alleged in Count II of Plaintiff's Second Amended Complaint to have committed.[8]  As relevant to Count II, the discrimination and exclusion provision reads:

(1) Equal terms

No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

(2) Nondiscrimination

No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

42 U.S.C. § 2000cc(b).

Plaintiff alleges that Defendants applied the Zoning Ordinance to MIA on less than equal terms with other religious and non-religious assemblies and institutions (i.e., violated RLUIPA's "equal terms" provision) and that the decisions to deny Plaintiff's zoning application and a public hearing before the Board of Trustees were discriminatory based on Plaintiff's Islamic faith (i.e., violated RLUIPA's "nondiscrimination" provision).  (ECF No. 30-1 ¶¶ 137-42.)

### a.      Nondiscrimination provision

---

[8]Plaintiff alleges a violation of the third type in Count III of its Second Amended Complaint, which the Court addresses *infra* in subsection H.

There are few published cases discussing RLUIPA's nondiscrimination provision, and the Court has not located a single decision in the Sixth Circuit discussing a claim under this subsection.  Defendants do not cite a case setting forth the elements of a claim under this subsection, referring instead to cases discussing the equal terms provision and conflating the two provisions.  The cases the court did locate suggest that a nondiscrimination claim under RLUIPA may not necessarily require proof of a similarly situated entity treated differently than the plaintiff.  *See, e.g., Church of Scientology of Georgia v. City of Sandy Springs, Ga*., 843 F. Supp. 2d 1328, 1371 (N.D. Ga. 2012) (indicating that a plaintiff may show a violation of RLUIPA's nondiscrimination provision through either direct evidence or by establishing an inference of discrimination through circumstantial evidence and applying).  This conclusion is reinforced by the Supreme Court's decision regarding a plaintiff's pleading requirements to assert a discrimination claim in other contexts.

In *Swierkiewicz*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002) the Supreme Court resolved "the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth  . . . in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)."  The Court answered this question in the negative because "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Id*. at 510, 122 S. Ct. at 997.  The Court reasoned that "[b]efore discovery has unearthed relevant facts and evidence, it may

21

be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." *Id.* at 512, 122 S. Ct. at 997-98.

This decision remains good law following *Twombly* and *Iqbal*. *See Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). Additionally, courts have applied the holding in *Swierkiewicz* to claims of discrimination arising in other contexts. *See Lindsay v. Yates*, 498 F.3d 434, 439 (6th Cir. 2007) (agreeing with the Second and Ninth Circuits that *Swierkiewicz* applies to any claim covered by the *McDonnell Douglas* framework) (citing *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) and *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1062 (9th Cir. 2004)).

Consequently, Plaintiff satisfies its burden to plead its RLUIPA discrimination claim "by drafting 'a short and plain statement of the claim' consistent with Federal Rule of Civil Procedure 8(a) . . . [that] 'give[s] the defendant fair notice of what [its] claim is and the grounds upon which it rests'". *Lindsey v. Yates*, 498 F.3d 434, 439 (6th Cir. 2007) (quoting *Swierkiewicz*, 534 U.S. at 512, 122 S. Ct. at 998) (additional quotation and citation omitted). The Court believes that Plaintiff pleads enough facts to render its discrimination claim plausible. Plaintiff alleges facts to create an inference that the decision to deny its rezoning application was based on its religious faith. Therefore the Court rejects Defendants' argument that Plaintiff must allege facts identifying a similarly situated secular comparator to adequately plead its RLUIPA discrimination claim.

        **b.**     **Equal terms provision**

RLUIPA explicitly places the burden on the plaintiff to initially establish a *prima facie* case supporting its claim.  42 U.S.C. § 2000cc-2(b).  For an "equal terms" violation, the plaintiff's *prima facie* case is comprised of four elements: "(1) the plaintiff must be a religious assembly or institution, (2) subject to a land use regulation, that (3) treats the religious assembly on less than equal terms, with (4) a nonreligious assembly or institution." *Primera Inglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1307 (11th Cir.2006).  The statute does not define the meaning of "equal terms" and the Sixth Circuit has not filled in this gap.  Those courts that have defined the term are not in agreement as to its meaning.  *See Roman Catholic Bishop of Springfield v. City of Springfield*, 760 F. Supp. 2d 172, 188 (D. Mass. 2011) (comparing cases).

As the District Court for the District of Massachusetts summarized in *Roman Catholic Bishop of Springfield*, the disagreement among the Circuits "centers on how broadly to construe the phrase 'nonreligious assembly or institution'" and what is a similarly situated comparator. *Id*. at 188 and n.11.  The Eleventh Circuit requires a plaintiff to demonstrate unequal treatment as compared to *any* secular institution or assembly.  *See, e.g., Midrashi Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1230-31 (11th Cir. 2004).  The Third Circuit has held that "a regulation will violate the [e]qual [t]erms provision only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similar situated *as to the regulatory purpose*." *Lighthouse Inst. for Evangelism, Inc. v. City of Long Beach*, 510 F.3d 253, 266 (2007)

23

(emphasis in original).  After evaluating the drawbacks of both tests, the Seventh Circuit settled on a modified version of the Third Circuit's test, concluding that the focus should be on secular assemblies or institutions similarly situated *as to the "accepted zoning criteria"* rather than the regulatory purpose.  *River of Life Kingdom Ministries v. Village of Hazel Crest, Illinois*, 611 F.3d 367, 371 (7th Cir. 2010).

Whichever test this court decides to follow– which it need not decide now– Plaintiff is required to identify a similarly situated secular comparator that received more favorable treatment.  Whether Plaintiff pleads facts sufficient to satisfy this requirement will be discussed below.

### 2.    Equal Protection

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This provision is "essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985).  The standard of review applicable to an equal protection claim varies depending on the impact of the challenged conduct: "When a statute or ordinance uniquely impacts adversely a suspect class or invades a fundamental right, the rigorous strict scrutiny standard will apply, but when it does not the ordinance is tested under the rational relationship standard."  *Mt. Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 406 (6th Cir. 1999).  Regardless of the standard of review, the plaintiff first must show that it was treated differently than others who were

24

similarly situated.  *Id.*

### 3.    Similarly Situated Comparators

In its Second Amended Complaint, Plaintiff identifies a number of secular and Christian entities that it alleges are similarly situated comparators.  The cases cited by Defendants in their pleadings reflect that the determination of whether these entities are "similarly situated" to Plaintiff is a fact intensive analysis.  *See, e.g., EJS Properties, LLC*, 698 F.3d at 885; *Primera Inglesia Bautista Hispana of Boca Raton*, 450 F.3d at 1311-13.  For example, the court will likely need to compare the timing of the applications, the body with the authority to decide the applications, the details of the proposed plans, the reasons for the decisions, and the zoning laws applicable to the requests.  It therefore is not surprising that all of the cases cited by Defendants in their motion and reply briefs involve summary judgment decisions or post-trial analysis of the plaintiff's claims.

To satisfy Rule 8's pleading requirements, the Court does not believe Plaintiff needs to expand its complaint– which is already thirty-six pages and two hundred and twelve paragraphs– to allege every fact relevant to whether the cited comparators are similarly situated in all relevant respects.  Including such facts in fact may contravene Rule 8's direction that a pleading must provide "a short and plain statement of the claim".  Fed. R. Civ. P 8(a)(2).  Additionally, the Court is precluded from considering the additional facts presented in Defendants' motions to distinguish Plaintiff's comparators

when deciding whether Rule 12(b)(6) dismissal is appropriate.[9]  For these reasons, the

Court concludes that Plaintiff alleges plausible claims under RLUIPA's equal terms

provision and the Fourteenth Amendment's Due Process Clause.

### G.      RLUIPA "Substantial Burden" Claim (Count I)

RLUIPA's substantial burden provision provides in pertinent part:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution–
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1).  The statute defines "religious exercise" to include "any

exercise of religion, whether or not compelled by, or central to, a system of religious

belief" including "[t]he use, building, or conversion of real property for the purpose of

---

[9]The Court is somewhat troubled by the fact that Plaintiff's allegations concerning purported similarly situated comparators relate to treatment by the Township's Planning Commission whose members are not defendants in this action and where the Township's Board of Trustees is the entity with ultimate authority to decide whether to grant or deny a zoning application.  (*See* ECF No. 301 ¶¶ 91-108.)  Defendants point this out in their motions to dismiss as one reason why Plaintiff fails to set forth similarly situated comparators.  Plaintiff does not directly respond to this identified deficiency in its response brief; although Plaintiff's response appears to suggest that the Board of Trustees followed the Planning Commission's recommendations when considering the applications of these other entities.  (*See* ECF No. 23-25.)  Thus the Court will assume for purposes of deciding Defendants' Rule 12(b)(6) motions that the Board of Trustees approved the allegedly similarly situated comparators' applications.

religious exercise . . . of the person or entity that uses or intends to use the property for that purpose." *Id*. § 2000cc-5(7). The statute, however, does not define "substantial burden." *See Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007).

The Sixth Circuit, like its sister Circuits, has found the legislative history of RLUIPA indicative of Congress' intent to apply the Supreme Court's interpretation of "substantial burden" from the "Free Exercise" context. *Id*.; *see also, e.g., Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003). The Sixth Circuit summarized that interpretation in *Living Water Church of God*:

> [W]hile the Supreme Court generally has found that a government's action constituted a substantial burden on an individual's free exercise of religion when that action forced an individual to choose between following the precepts of her religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs, . . . it has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs.

258 F. App'x at 734-35 (internal quotation marks and citations omitted). The Supreme Court additionally has found no substantial burden when the governmental action or regulation "only has an incidental effect that makes it more expensive or difficult to practice the religion." *Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 701 (E.D. Mich. 2004) (citing *Braunfeld v. Brown*, 366 U.S. 599, 81 S. Ct. 1144 (1961) and *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio*, 699 F.2d 303, 306 (6th Cir. 1983)). "[T]he Supreme Court has made

27

clear that the 'substantial burden' hurdle is high and that determining its existence is fact intensive.  *Living Water Church of God*, 258 F. App'x at 734.

Defendants seek dismissal of Plaintiff's RLUIPA substantial burden claim, arguing that none of their actions "substantially burden[ed]" Plaintiff's religious exercise. Defendants cite a number of cases where courts found no substantial burden created by the denial of a rezoning application.  (*See* ECF No. 52 at 22-23.)  In all but one of the cases cited by Defendants, these findings were made on a developed record, following discovery, in summary judgment proceedings, rather than on a motion to dismiss.  The one case Defendants cite that was a decision on a motion to dismiss, *Wesleyan Methodist Church of Canisteo v. Village of Canisteo*, 792 F. Supp. 2d 667 (W.D.N.Y. 2011), appears at this stage of the litigation to be distinguishable.

In *Wesleyan Methodist Church of Canisteo*, the district court granted the defendants' motion to dismiss the plaintiff's RLUIPA substantial burden claim which the plaintiff filed following the defendant's denial of its application to build a church in a light industry zone.  The court dismissed the claim, finding it "clear" from  the plaintiff's complaint "that the light industrial zoning requirements are a generally applicable burden that is neutrally imposed on churches and secular organizations."  *Id*. at 674.  The court also found from the allegations in the complaint that the plaintiff had options available to it, other than building its church in the light industrial zone, "including building new structures on its existing property."  *Id*.  Such factors were similarly relevant in the summary judgment decisions cited by Defendants.  For example in *Episcopal Student*

28

*Foundation*, Judge Borman found it determinative in granting summary judgment to the City of Ann Arbor on the plaintiff's RLUIPA substantial burden claim that the city's zoning decision did not prevent the plaintiff from religious exercise elsewhere in the city or on its existing property, even if its current location was not ideal and other available lots were more costly.  341 F. Supp. 2d at 704-06.

In the present case, the facts presented in Plaintiff's complaint do not suggest that it currently is engaged in religious exercise within the Township.[10]  It is not evident from Plaintiff's pleading that other land is available in the Township where it would be allowed to engage in religious exercise and to find that an alternative location exists would require looking beyond the complaint.  Finally, Plaintiff specifically alleges that the zoning laws have not been applied neutrally to it and that secular schools and Christian churches have been treated more preferably.  These are facts that will need to be analyzed in deciding whether Plaintiff can prevail on its RLUIPA substantial burden claim.

In short, the determination of whether Defendants' conduct has substantially burdened Plaintiff's religious exercise is too fact intensive to resolve on Defendants' motion to dismiss.

## H.    RLUIPA "Limitations and Exclusions" Provision (Count III)

RLUIPA's "limitations and exclusions" provision prohibits government entities

---

[10]Plaintiff's current address, which includes the present location of its school and community center (*see* ECF No. 30-1 ¶¶ 1, 2), are located within the City of Ann Arbor. http://www.a2gov.org/government/city_administration/City_Clerk/Elections/Pages/VotingDistricts.aspx

from imposing or implementing a land use regulation that "(A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3). Defendants contend that Plaintiff's claim under this provision is subject to dismissal because the provision applies to wholesale limitations on religious assemblies in a jurisdiction, not decisions precluding a religious assembly from rezoning a particular property within the jurisdiction. Indeed, the district court in *Roman Catholic Bishop of Springfield* dismissed the plaintiff's claim under this provision, finding that "nothing in the [o]rdinance in any way 'limits religious assemblies, institutions, or structures within a jurisdiction.'" 760 F. Supp. 2d at 191 (quoting 42 U.S.C. § 2000cc(b)(3)). Plaintiff does not address Defendants' argument in its response to their motions. The Court believes the provision is inapplicable to the facts alleged and therefore is dismissing the claim.

## I.      Free Exercise Clause (Count IV)

The First Amendment's Free Exercise Clause, made applicable to state and local governments by the Fourteenth Amendment, proscribes the making of any law "prohibiting the free exercise [of religion]." U.S. Const. Amend. I. The meaning of "religious exercise" in the First Amendment context is far narrower than under RLUIPA. Under RLUIPA, "religious exercise" encompasses "*any* exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(a) (emphasis added). In the First Amendment context it means "'first and foremost, the right to believe and profess whatever religious doctrine one desires.'" *Mt. Elliott*

30

*Cemetery Ass'n*, 171 F.3d at 403 (quoting *Dep't of Human Resources of Oregon v. Smith*,

494 U.S. 872, 878, 110 S. Ct. 1595 (1990)).  It also encompasses

> "the performance of (or abstention from) physical acts: assembling with
> others for a worship service, participating in sacramental use of bread and
> wine, proselytizing, abstaining from certain foods or certain modes of
> transportation.  It would be true . . . that a State would be 'prohibiting the
> free exercise [of religion]' if it sought to ban such acts or abstentions only
> when they are engaged in for religious reasons, or only because of the
> religious belief that they display."

*Id*. (brackets in original and quoting U.S. Const. Amend. I).

The First Amendment, however, " 'does not relieve an individual of the obligation

to comply with a valid and neutral law of general applicability on the ground that the law

proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'"  *Id*.

(quoting *Smith*, 494 U.S. at 1600 ) (internal quotation marks and additional citation

omitted).  Thus in *Mt. Elliott Cemetery Association*, the Sixth Circuit found as a matter of

law that the City of Troy did not violate the plaintiff's First Amendment rights by

refusing to grant the plaintiff's application to rezone its property for use as a new Catholic

cemetery,  *Id*. at 403.  The court found "that the zoning ordinance is a neutral law of

general applicability."  *Id*. (internal quotation marks omitted); *see also, Lakewood, Ohio

Congregation of Jehovah's Witnesses, Inc.*, 699 F.2d 307-08 (finding no violation of the

plaintiff's free exercise rights due to the city's application of its zoning ordinance to

prohibit the building of a church on the plaintiff's property, indicating that "building and

owning a church is a desirable accessory of worship, not a fundamental tenet of the

[plaintiff]'s religious beliefs."); *Grace United Methodist Church v. City of Cheyenne*, 451

F.3d 643, 651 (10th Cir. 2006). Stated differently by the Tenth Circuit: "[A] church has

no constitutional right to be free from reasonable zoning regulations nor does a church

have a constitutional right to build its house of worship where it pleases." *Grace United*

*Methodist Church*, 451 F.3d at 652 (quotation marks and citation omitted). Likewise,

here, the Court finds as a matter of law that Defendants' enforcement of the Township's

zoning laws did not violate Plaintiff's rights under the First Amendment's Free Exercise

Clause.[11]

### J.       Establishment Clause (Count V)

The First Amendment also prohibits the government from making any law

"respecting an establishment of religion." U.S. Const. Amend. I. "[A] government policy

or practice violates the Establishment Clause if (1) it has no secular purpose, (2) its

primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement

with religion." *Vision Church, United Methodist v. Village of Long Grove*, 468 F.3d 975,

991 (7th Cir. 2006) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612-13, 91 S. Ct. 2105

(1971)). "'The Establishment Clause also prohibits the government from favoring one

religion over another without a legitimate secular reason.'" *Id.* at 992 (quoting *Kaufman*

*v. McCuaghtry*, 419 F.3d 678, 682 (7th Cir. 2006)).

In its Second Amended Complaint, Plaintiff alleges that Defendants' "unique

_____

[11]To the extent Plaintiff contends that Defendant's did not apply the zoning
ordinance in a neutral way but with discriminatory animus, the Court believes this simply
restates its equal protection and RLUIPA claims.

application of the Zoning Ordinance" creates a "denominational preference against Islam" in violation of the Establishment Clause.  (ECF No. 30-1 ¶¶ 163, 166.)  Plaintiff further alleges that, while its petition for rezoning was denied, the Township's Planning Commission recommended approval of zoning petitions filed by six Christian institutions and assemblies from 2003 to the present, including one instance where traffic concerns were expressed.  (*Id*. ¶ 93.)  Thus while Defendants cited a permissible, secular purpose for denying Plaintiff's petition, Plaintiff essentially alleges that this purpose was pretextual.  Plaintiff's allegations suggesting that Defendants have favored other religions over its Islamic faith without a legitimate secular reason render this case distinguishable from *Vision Church, United Methodist* which Defendants rely on in their motions to dismiss.  468 F.3d at 994 (finding that the zoning requirements applied to deny a special use permit to allow construction of church complex on the plaintiff's property were applied equally to secular and religions institutions alike).  In short, Plaintiff's allegations state a claim under the First Amendment's Establishment Clause sufficient to evade Rule 12(b)(6) dismissal.

### K.    Free Speech and Association Claims (Counts VI and VII)

The First Amendment prohibits government decision makers from "abridging the freedom of speech, . . . or the right of the people to peaceably assemble."  U.S. Const. Amend. I.  In Count VI of its Second Amended Complaint, Plaintiff alleges that "Defendants have deprived . . . Plaintiff of its right to speak on matters of religion . . . by discriminating against Plaintiff based on the religious nature of its expression and by

inhibiting its right to freely and fully express its religious faith to MIA's students and the community." (ECF No. 30-1 ¶ 170.)  In Count VII, Plaintiff alleges that Defendants have infringed its right to free assembly "by prohibiting MIA students from assembly in an adequate school for the purpose of religious instruction." (*Id*. ¶ 176.)  However, the facts alleged in the Second Amended Complaint do not render these assertions plausible. Nothing in Plaintiff's complaint suggests that Defendants have prevented Plaintiff from speaking on matters of religion or expressing its religious faith to anyone, nor prohibited MIA's students from assembly.  The Court believes Plaintiff expands the right to assemble too far by claiming that MIA students have, not only a right to assemble, but a right to do so in an "adequate school."

For these reasons, the Court is dismissing Plaintiff's free speech and assembly claims.

### L.      State Law Claim (Count "XII")

In the final count of its Second Amended Complaint, Plaintiff reasserts the same violations of its constitutional rights under the Michigan Constitution that it claims were violated under the United States Constitution.  (ECF No. 30-1 ¶¶ 204-211.)  Defendants move to dismiss this claim, contending that the allegations therein are conclusory and devoid of factual allegations.  Defendants also encourage the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claim.  Because Plaintiff failed to respond to their arguments in support of the dismissal of this claim, defense counsel argued at the motion hearing that Plaintiff has abandoned the claim.

34

The Second Amended Complaint makes clear, however, that Plaintiff is relying on the same facts to plead violations of its rights under the Michigan Constitution that are set forth in detail in discussing the violations of the same rights under the U.S. Constitution. (*See* ECF No. 301 ¶ 202.)  As Plaintiff's counsel argued at the motion hearing, because the alleged violations of the Michigan and U.S. Constitution require the same proof, it would have been superfluous to brief why the state law constitutional claim should not be dismissed.  This commonality leads the Court to conclude that it should exercise supplemental jurisdiction over Plaintiff's state law claim.

Thus, at least with respect to the rights asserted under the federal Constitution that the Court is *not* dismissing (i.e., those arising under the Establishment Clause and Equal Protection Clause ), the Court rejects Defendants' argument that Plaintiff fails to allege sufficient factual matter to render its state law claim plausible.

### M.    Qualified Immunity

Now that the Court has narrowed the alleged constitutional violations remaining at play in Plaintiff's Second Amended Complaint, it will turn to the Individual Defendants' claim that they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).   The Supreme Court has established a

35

two-step inquiry to determine if qualified immunity protects an official's actions: (1) whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [official]'s conduct violated a constitutional right[ ]," and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001), overruled on other grounds by *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818. The Supreme Court has indicated that a court may exercise its discretion in deciding "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818. Obviously, this Court has chosen to first address whether Plaintiff's facts allege a violation of a constitutional right. The question remaining is whether Plaintiff's rights under RLUIPA and the Establishment and Equal Protection Clauses of the United States Constitution were "clearly established" when Defendants denied Plaintiff's rezoning petition.

In essence, the claims in Plaintiff's Second Amended Complaint that remain viable assert that Defendants denied Plaintiff's rezoning petition on the basis of animus to the Islamic faith rather than any legitimate, neutral purpose. It certainly was clearly established at all times pertinent to this action that individuals have a right to be free from discrimination by the government that burdens a fundamental right such as the free exercise of religion, *see Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531-32, 113 S. Ct. 2217 (1993), or that targets a suspect class such as a religious group, *see City of New Orleans v.* Dukes, 427 U.S. 297, 303, 96 S. Ct. 2513, 2516-17 (1976). In

36

its Second Amended Complaint, Plaintiff pleads sufficient factual matter to show that Defendants implemented the Township zoning ordinance not for a neutral, legitimate reason but for the purpose of discriminating on account of religion.  Thus the Court concludes that the Individual Defendants are not entitled to qualified immunity.

**IV.     Conclusion**

In summary, the Court concludes that Plaintiff pleads sufficient facts to establish the Individual Defendants' personal involvement in the alleged violations of its rights under federal law.  These defendants are not entitled to qualified immunity or legislative immunity with respect to the decision to deny Plaintiff's rezoning petition.  They are, however, entitled to legislative immunity with respect to Plaintiff's claim that they failed to schedule a hearing on the petition before the Board of Trustees.

Plaintiff's claims against the Individual Defendants to the extent they are sued in their official capacities are redundant as Plaintiff also is suing the Township.  Thus the Court is dismissing the Individual Defendants *in their official capacities only*.  To the extent Plaintiff's claim only is alleged against the Individual Defendants in their official capacities, those claims now should be construed as being against the Entity Defendants.

Because the Township Board of Trustee's execution of its final decision making authority to grant or deny zoning applications allegedly caused the deprivation of Plaintiff's civil rights, the Court concludes that Plaintiff alleges the municipality's liability under § 1983.

With respect to the specific claims alleged in Plaintiff's Second Amended

37

Complaint, the Court holds, as a matter of law, that Plaintiff fails to state viable claims with respect to violations of RLUIPA's limitations and exclusion provision (Count III) and the United States Constitution's Free Exercise Clause (Count IV), Free Speech Clause (Count VI), Freedom of Assembly Clause (Count VII), Procedural Due Process Clause (Count IX), and Substantive Due Process Clause (Count X).  To the extent Plaintiff is alleging violations of comparable clauses in the Michigan Constitution in Count XII, those claims also are dismissed.

Accordingly,

**IT IS ORDERED**, that Defendants' motions to dismiss (ECF Nos. 51, 52) are **GRANTED IN PART AND DENIED IN PART** in that the Individual Defendants are dismissed *in their official capacities only* and Counts III, IV, VI, VII, IX, and X of Plaintiff's Second Amended Complaint are dismissed with prejudice.[12]

Dated: May 22, 2013                        s/PATRICK J. DUGGAN
                                           UNITED STATES DISTRICT JUDGE

Copies to:
Lena F. Masri, Esq.
Gadeir I. Abbas, Esq.
Thomas R. Meagher, Esq.
Liza C. Moore, Esq.

---

[12]Count XII is dismissed with prejudice only in part, as described in part III.L.

38